# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES WHITNEY *et al.*, | ) | |
| Plaintiffs, | ) ) ) | Case No. 13 C 7322 |
| v. | ) ) | District Judge Charles. R. Norgle, Sr. |
| TALLGRASS BEEF COMPANY LLC *et al.*, | ) ) ) ) | Magistrate Judge Daniel G. Martin |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Renewed Motion to Compel. Plaintiffs James Whitney and the Bloom Agency, Inc. have sued Defendants Tallgrass Beef Company LLC and William Kurtis for employee wages and consultant compensation. Whitney was hired in 2008 as the Chief Executive Officer and Chief Financial Officer of Tallgrass, a single-member company operated by Defendant Kurtis. Tallgrass produces and sells grass-fed beef. Whitney alleges that Tallgrass and Kurtis owe him back wages and other reimbursable expenses. The Bloom Agency claims that it is entitled to payment for work it performed on a marketing plan for Tallgrass.

In July 2014, Defendants filed a motion to compel discovery. The motion included demands that Plaintiff James Whitney respond to Requests to Produce Nos. 17 and 18. Request 17 sought the production of communication records between Whitney and any third party relating to business dealings between Whitney, the law firm of Murphy & Hourihane, and Tallgrass. Request 18 asked for documents between the Bloom Agency and the law firm concerning Defendants "to the extent such document or communication

was made in the presence of or was otherwise disclosed to a third party (including the Bloom Agency)." Requests 9 and 10 posed similar requests to the Bloom Agency in a separate set of discovery demands.

Plaintiffs refused to answer any of the requests by claiming that the relevant documents were protected by one or more privileges. The Court withheld a ruling on these four production requests because Plaintiffs had not produced a privilege log to substantiate their privilege claims. The Court rejected Plaintiffs' contention that they were not required to produce a log by noting that Fed. R. Civ. P. 26 plainly states otherwise. The log must identify the documents at issue, the privilege relied on, and should describe the subject matter with enough details that "will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). *See also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992). In addition, the log must address the protected material on a document-by-document basis. Broad claims are ineffective. Courts in this district have been very clear that the failure to comply with Rule 26's requirement can result in a waiver of the privilege. *See*, *e.g.*, *Babych v. Psych. Solutions, Inc.*, 271 F.R.D. 603, 608 (N.D. Ill. 2010); *Wunderlich-Malec Sys., Inc. v. Eisenmann Corp.*, 2006 WL 3370700, at *8-9 (N.D. Ill. Nov. 17, 2006).

Several complications ensued. The Court permitted Defendants to file a renewed motion to compel once Plaintiffs complied with their obligation under Rule 26. Plaintiffs eventually produced a log. Defendants filed the instant motion, and Plaintiffs responded. The Court then issued an order on March 31, 2015 that found the privilege log to be inadequate. It directed Plaintiffs to submit a new log. The revised log identifies approximately 109 emails. Plaintiffs claim that each of these communications is protected

by both the attorney-client privilege and the work product doctrine. Defendants argue that Plaintiffs have waived the attorney-client privilege because Whitney and the Bloom Agency do not share any common legal interest in this case. Defendants claim that the knowing disclosure of otherwise privileged information between the two Plaintiffs is tantamount to a third party disclosure that results in a privilege waiver. They also argue that Plaintiffs have waived some of their work product claims.

## **Legal Standard**

When, as here, a court's jurisdiction arises under the diversity statute, the court construes most privileges under the law of the state in which it sits. *See Abbott Labs. v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 404-05 (N.D. Ill. 2001); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc,*, 152 F.R.D. 132, 139 (N.D. Ill. 1993). Illinois law is identical to federal law for the purpose of deciding whether the attorney client privilege exists. *See Wielgus v. Ryobi Technologies, Inc*., 2010 WL 3075666, at *3 (N.D. Ill. Aug. 4, 2010).

The Seventh Circuit has adopted eight principles that define the existence and scope of the attorney-client privilege. It arises

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (internal quote and citation omitted). The purpose of the privilege is "to encourage clients to make full disclosure to their attorneys." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Only communications that are made for the purpose of obtaining legal advice are protected.

3

*Matter of Grand Jury Proceeding*, 898 F.2d 565, 567 (7th Cir. 1990). The party asserting the privilege bears the burden of showing that it applies and has not been waived. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997); *Square D Co. v. E.I. Electronics, Inc.*, 264 F.R.D. 385, 390 (N.D. Ill. 2009).

Unlike the attorney-client privilege, the work product doctrine is always governed by federal law. *Abbott Labs.*, 200 F.R.D. at 405. This privilege protects records that counsel or a representative of a party creates in anticipation of litigation in order to prepare or analyze her client's case. Fed. R. Civ. P. 26(b)(3); *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). "A lawsuit need not be underway for the doctrine to apply provided the prospect of litigation [is] not remote." *Stopka v. Am. Fam. Mut. Ins. Co., Inc.*, 816 F. Supp.2d 516, 524 (N.D. Ill. 2011) (internal quote and citation omitted).

## Discussion

### A. The Work Product Doctrine

Plaintiffs' revised privilege log claims that all of the emails it identifies are protected by the work product doctrine. Defendants challenge this claim on a limited ground that fails to address the log's complete scope. For reasons that are unclear, Plaintiffs have not addressed the work product issue at all.

Plaintiffs' original privilege log claimed that all of the documents that Plaintiffs identified were protected as work product. The Court disagreed. The March 31, 2015 order found that Plaintiffs had waived the work product doctrine with respect to Requests 17 and 18. That was because Plaintiffs had not asserted that privilege in its original response to these two requests. Rule 33(b)(4) states that "[a]ny ground not stated in a timely objection

4

is waived unless the court, for good cause, excuses the failure." Plaintiffs did not show good cause because they failed to address the issue in their earlier briefing. That acted as a waiver to the work product doctrine for Requests 17 and 18.

The Court did not make the same finding concerning Requests 9 and 10 because Defendants' motion did not address them. Any argument on the issue would have been unavailing. Unlike Requests 17 and 18, Plaintiffs relied on the work product doctrine in their responses to Requests 9 and 10. (Dckt. 31 at Ex. 5). The March 31 order then instructed Plaintiffs to provide an adequate privilege log for Requests 9 and 10 as well as for Requests 17 and 18. (Dckt. 40 at p. 5, n.2).

Plaintiffs have failed to follow that directive. The current log again asserts the work product doctrine for *all* 109 entries. Since the log presumably covers Requests 9, 10, 17, and 18, Plaintiffs have repeated their original error without heeding the Court's clear order. The privilege log makes no attempt to distinguish between communications relevant to Requests 17 and 18 (where the doctrine has already been found to be waived) and Requests 9 and 10 (where it might apply). Some of the log's entries may be responsive to Requests 17 and 18; others may be relevant to Requests 9 and 10. The first category violates the Court's order; the second may or may not set out a legitimate privilege. The problem is compounded by the fact that Plaintiffs have made no effort in their briefing to clarify the issue. Plaintiffs, not the Court, bear the burden of showing on a document-by-document basis that its alleged privilege applies. *Gingerich v. City of Elkhart Probation Dept.*, 273 F.R.D. 532, 538 (N.D. Ind. 2011).

An inadequate privilege log can give rise to a waiver of a privilege, especially when it violates a court order. The Court does not make that finding in this case on two grounds.

First, such a waiver constitutes a severe sanction that requires a showing of bad faith. *See Muro v. Target Corp.*, 250 F.R.D. 350, 359-60 (N.D. Ill. 2007) (citing cases). Plaintiffs have not been diligent in producing an adequate privilege log throughout this dispute. But there is no basis for finding that they have acted in bad faith. Moreover, Defendants have not asked the Court to find a waiver for Requests 9 and 10. It would be improper for the Court to impose a sanction without giving Plaintiffs an adequate opportunity to defend their actions.

Second, the issue can be decided on other grounds. The parties dispute whether Plaintiffs waived the attorney-client privilege by sharing information between themselves. The Court finds that a waiver exists for the reasons discussed below. The same analysis applies to the work product doctrine. Many courts have found that the common interest exception to a privilege waiver applies to the work product doctrine as well as the attorney-client privilege. *See*, *e.g.*, *Costello v. Poisella*, 291 F.R.D. 224, 231 (N.D. Ill. 2013) (citing cases); *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 159 F.R.D. 307, 313 n.4 (D.D.C. 1994) (citing cases); *Trans-Western Petroleum, Inc. v. Wolverine Gas and Oil Corp.*, 2011 WL 6318528, at *4 (D. Utah Dec. 15, 2011). In the absence of any argument from Plaintiffs, and considering the analysis set out below, Plaintiffs are not entitled to assert the work product doctrine for any of the emails identified in the revised privilege log.

### B. The Attorney-Client Privilege

Plaintiffs' log also claims that all 109 entries are protected by the attorney-client privilege. With few exceptions, these entries involve shared communications between

Plaintiffs Whitney and the Bloom Agency. Plaintiffs argue that their disclosure of privileged documents to one another does not amount to a waiver because they share a common interest in this case.

The common interest doctrine permits otherwise privileged information to be exchanged between individuals without a waiver when they share a common legal interest. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). The doctrine is not a privilege, but an exception to the general rule that the attorney-client privilege is waived when a communication is shared with a third party. It extends the attorney-client privilege to situations "where the parties undertake a joint effort with respect to a common legal interest." *Id*. The doctrine can apply to privileged information shared between parties or, under some circumstances, between a party and a non-party. *The Pampered Chef v. Alexanian*, 737 F. Supp.2d 958, 965 (N.D. Ill. 2010). Nor do the parties involved need to be perfectly aligned for the doctrine to apply. Instead, they must show "actual cooperation toward a common legal goal" concerning the documents they seek to protect. *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 273 (N.D. Ill. 2004). The goal must be centered on current or potential litigation. *Beneficial Franchise Co., Inc. v. Bank One N.A.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001). Importantly, the parties' interest in the subject matter involved in the communication must be identical, not merely similar. *BDO Seidman*, 492 F.3d at 816.

The common interest exception to a waiver only comes into play once a party has first established that a privilege applies. *Dexia*, 231 F.R.D. at 274 ("Thus, if a document is not already shielded from production by a privilege, then the common interest doctrine

does not apply."). It was for this reason the Court insisted that Plaintiffs produce a privilege log before addressing the common interest issue. A party cannot bypass its obligation under Rule 26 to produce a privilege log merely by claiming that the common interest exception applies. That assumes that a document is privileged without first demonstrating the reason for it. The party asserting a privilege always bears the burden of proof on such matters. *Evans*, 113 F.3d at 1461.

1. **The First Set of Documents**

The attorney-client issue involves two sets of documents shared between different individuals. Although the parties do not distinguish one set from the other, doing so clarifies differences in the analysis that applies. The first set includes approximately 69 emails sent to or from Plaintiffs Whitney, the Bloom Agency, and their joint counsel John Scheid. The Court assumes that the emails related to the Bloom Agency are those identified in the privilege log as directed to Art Bloom. Defendants identified Mr. Bloom in their original motion to compel as the President of the Bloom Agency.

Neither party has explained why communications involving Mr. Bloom implicate the attorney-client privilege. The Court finds on its own motion that is the case. Illinois applies the control group test to determine if communications between a corporation and its counsel are protected. "Under the control group analysis, the only communications that are ordinarily held privileged under this test are those made by top management who have the ability to make a final decision, rather than those employees whose positions are merely advisory." *Rounds v. Jackson Park Hosp. and Med. Ctr.*, 319 Ill.App.3d 280, 288, 745 N.E.2d 561 (Ill.App.Ct. 2001). The Court is satisfied that Bloom meets this test by virtue of his position as the Agency's President.

The Court also finds that Plaintiffs' latest log has made a sufficient showing of the attorney-client privilege for all but seven of the communications that took place between Plaintiffs and Scheid.[1] A number of Plaintiffs' subject descriptions could certainly be challenged. However, Defendants do not take issue with any specific emails between this group on the basis of the attorney-client privilege. Their contention is that Plaintiffs have waived the privilege. That assumes that it exists. Based on the log, and in the absence of specific objections by Defendants, the Court finds that the attorney-client privilege applies to communications between the parties and their counsel except as specifically noted otherwise.

The potential waiver of this privilege presents more difficult issues. Unfortunately, neither party has explained how Illinois law construes the question of whether Plaintiffs share a common interest in this case. Both sides only cite federal authorities. If the issue were governed by federal law, the joint lawyer doctrine – not the common interest doctrine – would apply. The common interest exception ordinarily involves parties represented by separate attorneys. *In re Teleglobe Comms. Corp.*, 493 F.3d 345, 365-66 (3d Cir. 2007). When, as here, parties are represented by the same counsel, the joint lawyer doctrine applies.[2] *McCullough v. Fraternal Order of Police*, 304 F.R.D. 232, 238 (N.D. Ill. 2014).

---

[1] Six emails dated February 24, April 10, April 11, and May 14, 2014 are described as communications "regarding scheduling [a] conference call" on discovery, Rule 26 disclosures, or other activities. This fails to explain why any legal advice was sought or given in these emails. Plaintiffs' descriptions only suggest administrative matters that are not protected by the attorney-client privilege. The seventh communication is discussed below.

[2] Many courts have warned litigants that these two exceptions to a privilege waiver are not identical. *McCullough v. Fraternal Order of Police*, 304 F.R.D. 232, 237 (N.D. Ill. 2014) ("It is important to note that the joint lawyer and the 'common interest' doctrines are

By contrast Illinois law appears to include both exemptions under the heading of the common interest doctrine. *See Waste Mgt. Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill.2d 178, 194, 579 N.E.2d 322 (1991) ("In the typical case, where the common interest doctrine has been relied on to defeat a claim of privilege, the attorney has provided joint or simultaneous representation of the parties.").

At least one court in this District has concluded that Illinois' legal principles "appear to be the same" as those that govern federal law. *Dexia*, 231 F.R.D. at 273. This Court shares *Dexia*'s caution about reaching a more definite conclusion. *Dexia* only cited the seminal case of *Waste Management*, *supra*, concerning Illinois law. In that case, however, the Illinois Supreme Court did not set out the many distinctions found in federal law concerning the definition and scope of a common interest. It did not state, for example, that a common legal interest requires an *identical* interest between parties. This Court's (admittedly limited) research has not found any Illinois authority that has adopted the often complex nuances on this topic that exist under federal law. That said, the parties' complete silence on the issue, combined with their exclusive reliance on federal interpretations of the doctrine, lead the Court to follow *Dexia* for the purpose of this analysis.

Defendants rely for the most part on the fact that Plaintiffs do not share identical

---

distinct.") (citing cases). The issues are easily conflated with one another. A leading commentary notes that "[f]ederal courts continue to confuse the allied lawyer doctrine, which applies when parties with separate lawyers consult together, and the joint client doctrine, which applies when two clients share the same lawyer, by using the 'joint defense privilege' to mangle the two concepts. . . . Having lost its proper moorings in the privilege, the doctrine is spreading like crabgrass[.]" Wright and Graham, 24 Fed. Prac. & Proc., § 5493 n.91 (2013 Supp.).

legal claims against them: Whitney's action for wages arises under an Illinois statute, while the Bloom Agency's allegations stem from a contract that does not involve Whitney's wage claims. Plaintiffs concede that they joined together in this action against a common set of Defendants largely to save the expense of retaining separate counsel. Notwithstanding, they argue that their legal interests are identical because their claims "both arise out of the same core of operative facts."[3]

The Court disagrees with Defendants that identical claims between parties are required in order for them to share a common legal interest. Strictly speaking, parties do not need to have a formal claim at all because a pending lawsuit is not a prerequisite. The doctrine can apply when parties have a "common interest in current or potential litigation, either as actual or potential plaintiffs or defendants." *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 327 (N.D. Ill. 2008) (internal quotes and citation omitted). Their common interest only needs to relate to "a litigation interest, not merely a common business interest." *Id.* The parties also need not be aligned on the same side of a case to have a common interest. *Id*.

The Court also agrees with Plaintiffs that the common interest exception to a waiver could arise in this case if they shared the same core facts that they allege exist. The problem is that Plaintiffs' claim is entirely conclusory. They have not identified any fact that is allegedly part of this common core. The Court sees none. Plaintiffs' claims, as well as their respective interests in monetary damages, rest on entirely different legal *and* factual

---

[3] They also argue that their relationship with Scheid is "direct" and that the emails concern legal advice only for purposes of this litigation. That is relevant to establishing whether the attorney-client privilege exists. However, it fails to address the critical question of why Whitney and the Bloom Agency have a common legal interest in this case.

grounds.

Plaintiffs do not identify any commonality between their separate legal claims. Whitney was the former Chief Financial Officer of Tallgrass, a single-member company operated by Defendant Kurtis. Whitney claims that Defendants owe him back wages and other reimbursable expenses under the Illinois Wage and Payment Collection Act. The Bloom Agency's allegations have nothing to do with this claim or the facts that support it. The Bloom Agency says it is entitled to payment for work it performed on a marketing plan for Tallgrass. Plaintiffs' Amended Complaint alleges that these payments are owed pursuant to an oral contract that Tallgrass and the Bloom Agency entered into on May 4, 2009.

As for facts, the Amended Complaint does not allege any that overlap between these two claims by Plaintiffs. It is difficult to understand what such facts would involve. The Bloom Agency's purported contract with Tallgrass does not implicate any aspect of the wages that Whitney says are owed to him. Nor would the discovery that each Plaintiff would need to take to substantiate its claims be relevant to the other Plaintiff. The Bloom Agency could prove up each element of its breach of contract allegation against Defendants without touching on anything concerning Whitney's wage allegations. Indeed, evidence concerning Defendants' non-payment of wages would appear to be irrelevant to the breach of contract claim in the absence of any allegation that they are somehow legally linked to one another. Plaintiffs have not made such allegations. Nor does their brief identify anything specific that is common to them.

Likewise, Whitney's wage claims are entirely independent of the Bloom Agency's contractual issues. The Amended Complaint does not claim that Whitney played any part

in the contract's formation or the alleged failure to pay for services provided under it. It only states that the Bloom Agency presented a marketing proposal to Kurtis, Whitney, and the acting CEO of Tallgrass. This does not involve Tallgrass' failure to pay Whitney's wages. Whitney's actions in relation to the contract (and the Amended Complaint never states what they were) are wholly separate from Tallgrass' failure to comply with its statutory duty to pay his wages. In essence, therefore, the Amended Complaint alleges that Defendants engaged in two different sets of activities to harm each of the two Plaintiffs. There is no overlap between the parties' allegations, the facts relevant to their claims, or the Defendants' alleged misconduct that Plaintiffs rely on in this case. *Cf. Dexia*, 231 F.R.D. at 272 (finding a common interest where plaintiffs shared an interest in proving the same underlying wrongdoing by a defendant).

Plaintiffs point out that they are both seeking money damages from Defendants. This is insufficient to demonstrate a common interest, at least standing alone. Whitney and the Bloom Agency have no *legal* interest in the other party's successful recovery of damages. Either party's victory or loss at trial would have no effect on the other party's legal ability to recover damages. Plaintiffs do not even dispute this fact in their brief. They revert instead to the claim that they share an interest in a common set of facts. The Court readily grants that each party has a separate interest in prevailing in this matter. But Plaintiffs have not discussed a single fact or email in the privilege log that they claim is relevant to their purported identical legal interest in recovering damages.

The fact that two parties have an interest in pressing a case forward simultaneously is not, in itself, sufficient to show that the common interest doctrine applies. "A shared rooting interest in the successful outcome of a case . . . is not a common legal interest."

13

*Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp.3d 711, 732 (N.D. Ill. 2014) (emphasis omitted) (citing cases); *see also McCullough*, 304 F.R.D. at 240. "Thus, simply because two individuals choose to be represented by the same lawyer, the requisite commonality of interest required to make the doctrine applicable is not thereby assured." *Id.* at 238 (quoting *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398 417 (D.Md. 2005) ("Concurrent representation of two clients is not enough to make them joint client for purpose of the privilege.")); *Ayers Oil Co. v. Am. Bus. Brokers, Inc.*, 2009 WL 4725297, at *2 (E.D. Mo. Dec. 2, 2009) ("[S]uch a common interest must be an identical interest and a legal interest, as opposed to a merely commercial interest."). *Cf. Waste Mgt.*, 144 Ill.2d at194, 579 N.E.2d 322 ("It is the commonality of the interests which creates the exception, not the conduct of the litigation.").

As noted, Plaintiffs concede that they agreed to joint representation in this case to conserve their own monetary resources. That gives them a common financial interest in simplifying the discovery and trial process. That is not the same as showing that they share a legal interest. Plaintiffs' interest in saving litigation expenses refers only to their individual financial interests, not to their legal interests in this case. *See Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 237 (N.D. Ill. 2000) ("The common interest must be a legal one, not commercial or financial."). The fact that they have chosen to pursue this matter in one case instead of two (which they could have done) with joint counsel does not automatically confer a common legal interest that protects the sharing of privileged communications between Plaintiffs.

The Court reiterates that the burden of proof on this issue lies exclusively with

14

Plaintiffs. Their brief has not discussed any part of the privilege log or identified any fact that both parties will rely on to pursue their separate claims. Nor have Plaintiffs asked the Court to review *in camera* any documents that they are seeking to protect as privileged. For these reasons, the Court finds that Plaintiffs have not shown why the common interest doctrine applies to communications between Whitney, the Bloom Agency, and Scheid. Plaintiffs have waived the protections of the attorney-client privilege (and the work product doctrine) for this set of documents.

## 2. <u>The Second Set of Documents</u>

The second set of documents involves approximately 40 emails that were, for the most part, also exchanged between Plaintiffs and Scheid. These documents, however, were additionally shared with one or more of a different set of individuals. This new group includes persons identified as Randall Borek, John Hourihane, and Rebecca Whitney. Plaintiffs did not address these individuals in their response to Defendants' renewed motion. At the Court's request, the parties submitted short supplemental briefing. Plaintiffs clarify that Ms. Whitney is the Bloom Agency's controller. They identify Borek and Hourihane as attorneys with the law firm of Murphy & Hourihane. They further claim that these attorneys represent them. (Dckt. 66). Plaintiffs do not identify the nature or scope of that representation. Borek and Hourihane have not appeared in this case on their behalf.

Since communications that jointly involve Plaintiffs and Scheid waive the attorney-client privilege, all emails between Whitney, the Bloom Agency, and Scheid that involve Ms. Whitney, Hourihane, or Murphy, are also not privileged. Assuming for the sake of argument that the common interest doctrine did apply between Plaintiffs and their counsel,

15

however, Plaintiffs have still not shown why any of the emails in this second set of documents would be privileged.

   a.   <u>Ms. Whitney</u>

Plaintiffs claim that communications that involve Ms. Whitney are privileged because she shares a common interest with Plaintiffs both as an employee of the Bloom Agency and as the wife of Plaintiff Whitney. This fails on three grounds. First, the common interest doctrine does not confer a privilege. It is only an exception to the waiver of a privilege. *McCullough*, 304 F.R.D. at 239.

Second, Plaintiffs have not addressed why being an employee of the Bloom Agency entitles Ms. Whitney to receive otherwise privileged communications in this litigation. Corporate employees qualify as the "client" for purposes of the attorney-client privilege under Illinois law only when they satisfy the control group test. *Doe v. Township High Sch. Dist. 211*, — N.E.2d —, 2015 WL 3543059, at *18 (Ill.Apt.Ct. June 5, 2015). Plaintiffs must show that Ms. Whitney is part of the Agency's "top management who have the ability to make a final decision" rather than only advisory decisions. *Rounds*, 319 Ill.App.3d at 288, 745 N.E.2d 561.

Plaintiffs have not addressed this crucial issue in their briefs. Instead, they cite *South Berwyn Sch. Dist. 100*, *supra*, to support their position. But that case did not rely on Illinois' control group test. Federal law governed the privilege analysis in *South Berwyn School District* because its plaintiffs' claims were brought pursuant to a federal statute. A public school is not a private company subject to the corporate control group analysis. Moreover, federal law does not even use the Illinois control group test in the corporate

context. *See Goswami v. DePaul Univ.*, 8 F. Supp.3d 1004, 1011 n.5 (N.D. Ill. 2014) ("Illinois law . . . employs the 'control group' test, which has been abandoned in the context of federal privilege law."). Plaintiffs do not argue that Illinois' control group test would reach the same result in this case as federal law did in *South Berwyn School District*.

Third, Plaintiffs have not shown how Ms. Whitney shares a common legal interest with Plaintiffs. They have not cited any authority, or provided any explanation, of why she has an identical legal interest in this suit based on her marital relationship. Ms. Whitney's status as an employee of the Bloom Agency does not give her any legal interest in this litigation, much less one that is identical to her employer's. Plaintiffs do not rely on her position as the Agency's controller to support their claim. They appear to assume that Whitney's employee status confers a common legal interest *per se*. If that were the case, corporations could routinely disseminate privileged communications with all of their employees and hide beneath the broad cloak of the common interest doctrine. Clearly, that is not the case. Thus Plaintiffs have failed to carry their burden of showing that emails that included her did not waive the attorney-client privilege. Assertions of the work product doctrine are waived for the same reasons.

   b.   **Borek and Hourihane**

Plaintiffs' supplemental brief does not claim that the common interest doctrine applies to attorneys Borek and Hourihane. Plaintiffs' only argument is that communications shared with these attorneys are protected by the attorney-client privilege.

Plaintiffs have not provided any argument to support this claim. The Court has no idea from Plaintiffs' brief who these attorneys are in relation to this case. Plaintiffs have

17

also not explained the nature or scope of the representation that Borek and Hourihane are said to have provided them outside the case. In addition, Plaintiffs are silent as to why any communication concerning their claims in this litigation was shared with these outside attorneys. This fails to explain essential elements of the attorney-client privilege such as what legal advice Plaintiffs were seeking from these outside counsel, what advice was given, or why an expectation of confidentiality attached to their communications. As the Court advised Plaintiffs in its earlier ruling, the attorney-client privilege is strictly construed in order to cover the "narrowest possible limits." *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). It "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976).

Insofar as these issues are elucidated in other parts of the record, the Court will not troll through earlier motions and briefs to find an explanation. That burden falls on Plaintiffs. "The party seeking to invoke the privilege bears the burden of proving all of its essential elements." *Evans*, 113 F.3d at 1461; *see also Stopka*, 816 F. Supp.2d at 525-26 ("In Illinois, the party claiming the attorney-client privilege has the burden of coming forward with evidence that establishes its existence."). Conclusory allegations are insufficient to demonstrate that a privilege exists. *See id.* at 526 ("It is . . . well established that to simply assert the existence of an attorney-client privilege is insufficient to demonstrate that one is entitled to its protection.") (internal quotes and citation omitted).

Even if the attorney-client privilege applied, its would still be waived. The emails shared between these attorneys, Plaintiffs, and Scheid are waived for the reasons discussed earlier. Some of them were additionally exchanged with Ms. Whitney. Her lack

of a common legal interest with Plaintiffs waives any privilege that might attach to communications with Murphy or Hourihane.

Only one possible exception exists. An email dated December 23, 2013 was exchanged between Art Bloom and Borek only. The description states that it was made "in response to counsel's request for additional information to file [a] more definitive statement." Plaintiffs do not explain what this means. The Court construes it to indicate that Bloom requested certain facts that Scheid needed to file a document in federal court. Even assuming for the sake of argument that Bloom had an attorney-client relationship with Borek, this description does not show that he sought or received any legal advice from Borek. The privilege does not arise without such advice. The attorney-client privilege further requires an expectation of confidentiality. Plaintiffs' description suggests that only facts were provided so that Scheid could file a public document. The privilege does not protect facts. *Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. 371, 378 (N.D. Ill. 1999) ("The attorney-client privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."). Absent any claim that legal advice was sought or given, this email must also be disclosed.

## Conclusion

For all these reasons, Defendants' Renewed Motion to Compel [53] is granted. Plaintiffs are directed to produce copies of the documents identified in the revised privilege log within seven business days of the entry of this order.

ENTERED:

_____
DANIEL G. MARTIN
United States Magistrate Judge

Dated: June 18, 2015.